NOT FOR PUBLICATION

|  | **FILED** |
|---|---|
|  | JAMES J. WALDRON, CLERK |
|  | [June 10, 2009] |
|  | U.S. BANKRUPTCY COURT |
|  | CAMDEN, N.J. |
|  | BY: <u>Elizabeth Grassia</u>, Deputy |

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

```
                                        :
IN RE:                                  :    CHAPTER 7
                                        :
CHRISTOPHER R. SHAFER,                  :    CASE NO.  07-14206 (GMB)
                                        :
              Debtor.                   :    O P I N I O N
                                        :
```

APPEARANCES:    Christopher R. Shafer
                3199 Federal Street
                Camden, NJ  08105
                Appearing Pro Se

                Anthony Sodono, III, Esquire
                Trenk DiPasquale Webster Della Fera & Sodono, P.C.
                347 Mount Pleasant Avenue
                Suite 300
                West Orange, NJ  07052
                Counsel for Barry R. Sharer, Chapter 7 Trustee

                Robert N. Braverman, Esquire
                Law Office of Robert Braverman, LLC
                Suite 300
                1040 N. Kings Highway
                Cherry Hill, NJ  08034
                Counsel for Juan Rios, Elizabeth Rios and Patrick Grimes, Esquire

                Brian D. Schwartz, Esquire
                Craner, Satkin, Scheer, Schwartz & Arnold, P.C.
                320 Park Avenue
                P.O. Box 367
                Scotch Plains, NJ  07076
                Counsel for Portfolio Recovery Associates, LLC

Before the Court is Christopher R. Shafer, Sr.'s (the "Debtor") motion to convert from Chapter 7 to Chapter 13. The Debtor moves before the Court as a pro se litigant. The Chapter 7 Trustee, Barry R. Sharer (the "Trustee") and unsecured creditors, Portfolio Recovery Associates, LLC ("Portfolio Recovery") and Juan and Elizabeth Rios (the "Rioses"), object to the conversion. A hearing in this matter was held on October 14, 2008, and the Debtor was instructed by the Court to file an additional affidavit regarding the Debtor's income and expenses. The Debtor has filed such an affidavit. In this decision, the Court will address whether the Debtor's conduct is atypical, and whether, in considering the totality of the circumstances, the Debtor is permitted to convert from Chapter 7 to Chapter 13.

## I.   JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(a) and 157(a), and the United States District Court for the District of New Jersey's July 23, 1984 Standing Order, referring all bankruptcy cases to the bankruptcy courts. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). The District of New Jersey is a proper venue pursuant to 28 U.S.C. §§ 1408 and 1409. The following shall constitute findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Because the Court will be required to review the totality of the circumstances surrounding the Debtor's request for conversion to Chapter 13, the Court will briefly discuss the Debtor's main bankruptcy case and the adversary proceedings filed against the Debtor. There has been extensive motion practice in both the main case and the adversary proceedings.

On March 28, 2007, the Debtor, represented by his attorney wife, Dorca I. Delgado-Shafer ("Delgado-Shafer"), filed a voluntary Chapter 7 bankruptcy petition. In his bankruptcy petition, the Debtor listed no real property on Schedule A and almost $475,000 of disputed unsecured non-priority claims ("unsecured claims") on Schedule F. On his Schedule I, the Debtor listed $1,390.72 as his "combined average monthly income" and $2,521.00 as his "average monthly expenses," leaving him with a "monthly net income" of negative $1,130.28. Several reaffirmation agreements were filed with the Court on March 28, 2008, including a reaffirmation agreement between the Debtor and "Country Wide" for a mortgage in the amount of $119,000, which was certified by Delgado-Shafer as an agreement that would not impose an undue hardship on the Debtor. The Trustee was appointed to the case on March 29, 2008 and an order granting the Trustee's application to employ the firm of Trenk, DiPasquale, Webster, Della Fera, & Sodono, P.C. as attorneys for the Trustee was entered on May 11, 2007.

Three adversary proceedings have been filed against the Debtor: (1) the Trustee's complaint, Adversary Proceeding No. 07-2662, regarding an objection to or the revocation of the Debtor's discharge pursuant to 11 U.S.C. § 727(c)-(e), which was filed on December 1, 2007; (2) the Rioses' complaint, Adversary Proceeding No. 08-1004, regarding the nondischargeability of their debt pursuant to 11 U.S.C. § 523(a)(2), and (4), which was filed on January 2, 2008; and (3) the Trustee's complaint, Adversary Proceeding No. 08-2435, regarding fraudulent transfers of property pursuant to both 11 U.S.C. § 548 and state law, which was filed on October 13, 2008. As of the date of this opinion, the Trustee's complaint regarding objection to the Debtor's discharge has been withdrawn.

The Debtor's strategy over the course of his Chapter 7 bankruptcy has been to litigate any request for information and any legal issue not found in his favor. For example, the Debtor has filed numerous motions to quash subpoenas where creditors and/or the Trustee have requested information from the Debtor. The Debtor has objected to every proof of claim filed in this bankruptcy estate and has been successful in expunging most of the claims. The Debtor has filed motions to sanction parties or the attorneys that defend the parties' positions against the Debtor. For almost every ruling that the Debtor has disagreed with the outcome, the Debtor has filed motions for reconsideration, causing the parties in the actions to continuously re-litigate motions brought before the Court. Further, the Debtor has filed numerous false swearing motions (a state court cause of action), accusing attorneys of dishonesty with the Court. The Debtor has also asserted that ethics complaints have been filed with the Office of Attorney Ethics ("OAE") against several of the attorneys that have been involved with the Debtor's bankruptcy and state court cases. In addition, the Debtor filed a motion for Judge Gloria M. Burns to recuse herself from his bankruptcy case — a motion which was denied by the Court.

At some point in the summer or fall of 2008, Delgado-Shafer ceased representation of the Debtor. The Debtor proceeded with the bankruptcy case pro se. Delgado-Shafer has not moved to withdraw from the case but has since been suspended from the practice of law in the state of New Jersey for two years; therefore, the Court has recognized the Debtor as pro se. Additionally, since the time of the Debtor's Chapter 7 filing, the Debtor and Delgado-Shafer may have obtained a divorce. Although no documentation has been presented to support this assertion, a property settlement agreement has been submitted to the Court and the Trustee in which the Debtor and Delgado-Shafer agreed to divide martial property. The document was

signed by both parties and is dated June 23, 2006, but the Court is unaware of whether the property settlement agreement has been incorporated into a final judgment of divorce. The Court pointed out to Delgado-Shafer the potential conflict of interest with her representation of the Debtor because the Debtor and Delgado-Shafer were co-defendants in state court proceedings and were engaged in divorce proceedings against one another.

On September 15, 2008, the Debtor filed this motion to convert from Chapter 7 to Chapter 13. In his proposed Chapter 13 Plan (the "Plan"), the Debtor anticipates paying $50 per week for sixty months as payment for the unsecured claims that remain. The Debtor asserts that he has paid and will continue to pay the Capital One Auto Finance's secured claim outside of the Plan. The Debtor does not account for administrative expenses already incurred by the Trustee or administrative expenses that would be incurred by a Chapter 13 trustee if the case is converted.

The Trustee has objected to the Debtor's conversion. Portfolio Recovery, a creditor with an allowed unsecured claim, and the Rioses, another unsecured creditor with an asserted claim of $250,000, also object to the conversion. The Debtor filed an answer in response to the Trustee's objection to his motion to convert.

The Court held a hearing on October 14, 2008 regarding the Debtor's conversion motion. The Debtor did not testify under oath, but as a pro se debtor, he did answer questions elicited by the Court. The Debtor asserted that his motivation for filing his Chapter 7 bankruptcy petition was because a New Jersey Superior Court judge was "just signing orders" for default judgments against the Debtor without proper service on the Debtor. The Debtor argued that he has objected to the duplicate debts and has had most of the debts on his original Schedule F expunged, leaving

5

three claims: two claims for Pressler & Pressler, LLP (New Century Financial Services, Inc.) and one claim for Portfolio Recovery. The Debtor stated that his motivation for filing his conversion motion at this time was because the duplicate claims have been expunged, and now he owes approximately $10,000 to unsecured creditors, which is an amount he can afford to pay.

The Court brought to the Debtor's attention that the Rioses' claim has not been expunged and that the Debtor would be required to pay within the Plan administrative expenses such as the Trustee's attorney's fees even if the Debtor's conversion motion were to be granted. In response to the Court, the Debtor argued that the Rioses' claim is not a valid claim and that the Trustee is only entitled to fair and reasonable expenses and should not be allowed to obtain a large payment from the Debtor, which would leave a small payment for creditors. The Court stated it was not going to make such determinations at the conversion hearing and that, nevertheless, the Debtor would still have administrative expenses to pay.

Next, the Court questioned the Debtor regarding deficiencies with the Debtor's verified bankruptcy schedules filed at the outset of his Chapter 7 petition; specifically, the Court asked the Debtor if he failed to list real property on his Schedule A in which he had a property interest. The Debtor asserted that he could not remember whether he listed any property on his Schedule A and did not have knowledge of which properties he owned or owns, but he did state that he disclosed all of the properties at his 11 U.S.C. § 341(a) meeting. The Debtor claimed that the Trustee has never requested any additional information regarding the sale of 22 Sunflower Circle. The Court confirmed on the record that the Debtor had not listed any real properties on his original Schedule A, and the Debtor responded by asserting that he could always amend the

schedules. The Debtor did state that he was aware that he signed his schedules under penalty of perjury and was responsible for the consequences.

The Debtor also admitted, when asked by the Court, that he did not list any properties as having been transferred on his Statement of Financial Affairs ("SOFA") because he sold the properties. Although he was represented when he filed his petition, the Debtor argued that, since he is not an attorney, he did not realize such sales could be construed as transfers. Additionally, the Debtor submitted that: (1) a property settlement agreement was entered into between himself and his ex-wife; (2) he was unsure of the dates of the settlement; (3) he believes that the final divorce from his ex-wife was finalized sometime in October of 2008; and (4) whatever the property settlement agreement says his ex-wife owns she owns.

The Court asked the Debtor whether he had consulted with an attorney beside his ex-wife regarding his bankruptcy case. The Court reminded the Debtor that it had raised the issue involving a potential conflict of interest in regard to his ex-wife's legal representation of the Debtor at the beginning of his bankruptcy case. The Debtor stated that he has not consulted an attorney other than his ex-wife and that he has tried to hire several attorneys but could not afford the retainer.

The Court also asked the Debtor to address how he was going to fund the Plan because the original Schedules I and J filed with the Court listed a negative monthly net income of $1,130.28. The Debtor stated that he had used the income from his original Schedule I as his current income because that is what he thought he had to do and that he could modify the schedules to display his current income and expenses, indicating that Schedules I and J were not accurate and that he was aware of this fact.

At the hearing, the Trustee emphasized that the Debtor is not an unfortunate but honest Debtor and that the Debtor's motive for filing his conversion motion at this time is because, after eighteen months of investigation and $100,000 in costs and fees to the Trustee, the Trustee has now discovered some of the Debtor's undisclosed assets and is pursuing the liquidation of such assets to pay creditors. The Trustee stressed that the Debtor blatantly did not disclose transfers on his SOFA, blatantly did not disclose real property he owned on Schedule A, and has blatantly not disclosed personal property on his Schedule B as evidenced by the Debtor's recent amendment to the schedule. Further, the Trustee highlighted the fact that the Debtor could not possibly file a feasible Chapter 13 plan because the Debtor has more than the $10,000 in claims he believes are against him. Finally, the Trustee reminded the Debtor that he has been ordered by the Court on at least two occasions to provide the Trustee with his complete and unredacted tax returns for the years 2005, 2006, and 2007 and has still failed to produce them.

Also at the hearing, counsel for the Rioses stated that his clients support the Trustee's position, asserting that the Debtor's Plan is not feasible and that the only realistic chance they have of recovering against the Debtor is if the Trustee is successful in his fraudulent transfer complaint.

At the end of the hearing, the Court ordered the Debtor to submit an affidavit that discusses the Debtor's current income and expenses and to include supporting documentation. Additionally, the Court again ordered the Debtor to provide his complete and unredacted tax returns for the years 2005, 2006, 2007 to the Trustee. The Court told the parties that the Trustee could file a response to the Court regarding the Debtor's amended income and expenses

information and that the Trustee could wait to respond until after he received the Debtor's ordered tax returns.

As requested by the Court, the Debtor filed amended Schedules I and J on October 20, 2008, listing $2,858.51 as his "combined monthly income," $2,411.00 as his "average monthly expenses," and $447.51 as his "monthly net income," but he did not adequately explain the variance between his original Schedules I and J and his amended Schedules I and J. The Debtor asserts on his amended Schedule I that his hourly pay has increased by $2.70 per hour and that he is no longer paying the $258.00 in monthly credit card garnishments.

On December 2, 2008, the Trustee docketed correspondence with the Court and parties in the case, stating that the Debtor had at that time still failed to produce the ordered tax returns and that the Trustee was still requesting denial of the Debtor's conversion motion.

On December 16, 2008, before the Court made a determination regarding the Debtor's conversion motion, the Debtor filed a motion to reconsider his conversion motion, questioning why his motion had not yet been ruled on and why the Court was waiting on the Trustee to receive the Debtor's 2005, 2006, and 2007 completed tax returns before ruling on the motion.

On December 24, 2008, the Court granted the Trustee's counsel's application for compensation, allowing $81,582.00 in commissions/fees and $5,014.01 for expenses.

The Trustee did not file additional submissions regarding the Debtor's tax returns, although the Court believes that the Debtor has provided them to the Trustee at this point; therefore, the Court proceeds to issue this opinion.

### III.    DISCUSSION

In reviewing a debtor's motion to convert from Chapter 7 to Chapter 13, three subsections of the Bankruptcy Code are relevant, (a) and (d) of 11 U.S.C. § 706 and § 1307(c).  Section 706(a) provides that "[t]he debtor may convert a case under this chapter to a case under chapter . . . 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title."  11 U.S.C. § 706(a) (2006).  Section 706(d) provides that "[n]otwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter."  11 U.S.C. § 706(d) (2006).  Section 1307(c) provides that "on request of a party in interest . . . and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause . . . ."  11 U.S.C. § 1307(c) (2006).  Courts have found that "[a] bankruptcy filing made in bad faith may be dismissed 'for cause' under 11 U.S.C. § 1307(c), although § 1307(c) does not explicitly mention the good faith requirement."  In re Myers, 491 F.3d 120, 125 (3d Cir. 2007) (citing In re Lilley, 91 F.3d 491, 496 (3d Cir. 1996)).

The United States Supreme Court has held that a debtor whose conduct is "atypical" does not have an "absolute right" to convert from Chapter 7 to Chapter 13.  Marrama v. Citizens Bank of Mass., 549 U.S. 365, 371-75 (2007).  The Marrama decision involved a debtor that had made misstatements on his verified bankruptcy schedules regarding the value of a property and then claimed that the mistakes were a "scrivener's error."  549 U.S. at 369.  Once the debtor learned that the trustee intended to recover the asset as property of the bankruptcy estate, the debtor filed a motion to convert from Chapter 7 to Chapter 13 and argued that he had an absolute right to

10

convert pursuant to the "plain language of § 706(a)." Id. at 370. The Supreme Court concluded that the debtor did not have an absolute right to covert to Chapter 13 because § 706(a) is expressly limited by § 706(d). Id. at 372. After finding that the debtor was not eligible to be a Chapter 13 debtor pursuant to 11 U.S.C § 109(e) and pursuant to the term "cause" in § 1307(c), which was found to allow courts to dismiss Chapter 13 cases for "pre-petition bad-faith conduct," id. at 372-73, the Supreme Court reasoned:

> a ruling that an individual's Chapter 13 case should be dismissed or converted to Chapter 7 because of pre-petition bad faith conduct, including fraudulent acts committed in an earlier Chapter 7 proceeding, is tantamount to a ruling that the individual does not qualify as a debtor under Chapter 13. That individual . . . is not a member of the class of "'honest but unfortunate debtors'" that the laws were enacted to protect. See Grogan v. Gardner, 498 U.S. [279], 287 [(1991)] . . . . The text of § 706(d) therefore provides adequate authority for the denial of [a] motion to convert.

Id. at 374. The Supreme Court further noted that:

> Nothing in the text of either § 706 or § 1307(c) (or the legislative history of either provision) limits the authority of the court to take appropriate action in response to fraudulent conduct by the atypical litigant who has demonstrated that he is not entitled to the relief available to the typical debtor. On the contrary, the broad authority granted to bankruptcy judges to take any action that is necessary or appropriate "to prevent an abuse of process" described in § 105(a) of the Code, is surely adequate to authorize an immediate denial of a motion to convert filed under § 706 in lieu of a conversion order that merely postpones the allowance of equivalent relief and may provide a debtor with an opportunity to take action prejudicial to creditors.

Id. at 374-75.

In Marrama, the Supreme Court did not define "with precision what conduct qualifies as 'bad faith' sufficient to permit a bankruptcy judge to . . . deny conversion from Chapter 7," id. at 375 n.11, but "emphasize[d] that the debtor's conduct must, in fact, be atypical. Limiting

11

dismissal or denial of conversion to extraordinary cases is particularly appropriate in light of the fact that lack of good faith in proposing a Chapter 13 plan is an express statutory ground for denying plan confirmation." Id. (citing 11 U.S.C. § 1325(a)(3); In re Love, 957 F.2d 1350, 1356 (7th Cir. 1991)). "Ultimately, under Marrama, bankruptcy courts have broad discretion in determining whether a debtor has acted in bad faith and that the presence of bad faith is sufficient ground to deny a debtor's motion to convert his or her case under [§] 706." In re Piccoli, Civil Action No. 06-2142, 2007 WL 2822001, at *5 (E.D.Pa. Sept. 27, 2007) (citing In re Truong, No. 03-40283, 2007 WL 708874, at *3-4 (Bankr. D.N.J. March 5, 2007)).

Because, pursuant to § 706(a), "[t]he same good faith analysis performed when evaluating a Chapter 13 petition should be performed when evaluat[ing] a motion to convert . . . from Chapter 7 to Chapter 13," courts use the Third Circuit Court of Appeals' decision in Lilley to make the good faith determination. Piccoli, 2007 WL 2822001, at * 6. The Third Circuit has found that "the good faith of Chapter 13 filings must be assessed on a case-by-case basis in light of the totality of the circumstances." Lilley, 91 F.3d at 496. In Lilley, the Third Circuit listed a non-exhaustive list of factors that are relevant to the determination of whether a Chapter 13 petition is filed in good faith, which includes:

> the nature of the debt . . . ; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected the creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors.

Id.

In addition to the good faith, courts have reviewed other factors in considering the totality of the circumstances surrounding a conversion motion. See, e.g., In re Pakuris, 262 B.R. 330,

12

335-36 (Bankr. E.D.Pa. 2001) (finding that a Chapter 7 debtor who failed to disclose a equitable property division interest and filed a conversion motion when the Trustee pursued a claim in her interest was a conversion not sought in good faith (citing In re Tardiff, 145 B.R. 357, 360-61 (Bankr. D.Me. 1992))). Other factors include:

> [(i)] whether the debtor can propose a confirmable [C]hapter 13 plan;
>
> [(ii)] the impact on the debtor of denying conversion weighed against the prejudice to creditors caused by allowing the conversion;
>
> [(iii)] the effect of the conversion on the efficient administration of the bankruptcy estate; and
>
> [(iv)] whether conversion would further an abuse of the bankruptcy process.

Id.

Several courts have used the factors outlined in Lilley and Pakuris to assist in considering whether a debtor that is attempting to convert from Chapter 7 to Chapter 13 meets the good faith requirements of Chapter 13 and whether in reviewing the totality of the circumstances it is permissible for such a debtor to convert. See, e.g., In re Murray, 377 B.R. 464, 468-69 (Bankr. D.Del. 2007); Piccoli 2007 WL 2822001, at *6 (affirming a bankruptcy court decision that denied conversion to a debtor where her "sole purpose" for conversion was to "defeat[]" a Trustee's avoidance of a fraudulent conveyance and as such was filed in bad faith). In Murray, a case involving a debtor that did not disclose assets, the bankruptcy court specifically focused on the following good faith factors outlined in Lilley: "[(1)] the timing of the motion; [(2)] the debtor's motive in filing the motion; and [(3)] whether the debtor has been forthcoming with the bankruptcy court and its creditors." 377 B.R. at 469 (citing Pakuris, 262 B.R. at 335-36).

13

Here, the Debtor's conduct is atypical. He has admittedly not disclosed all of the assets that should have been disclosed on his verified schedules and SOFA. After two years, there is still uncertainty as to the assets that do or do not belong to the Debtor, and the Debtor does not or is unable to clarify the interests and assets that are or have been in his possession. The Debtor's situation is similar to the debtor in Marrama, but here, as argued by the Trustee, the Debtor's actions are more egregious because he did not just make a scrivener's error and then attempt to convert when the trustee tried to recover, but instead, he failed to disclose the real property and then attempted conversion when the Trustee's intent to recover was made known. It is possible that the Debtor was poorly advised by his former attorney, but this does not reduce his blame for lack of honesty and transparency with the Court, Trustee, and creditors; as such, the Debtor's conduct is atypical, and he cannot be considered an honest but unfortunate debtor.

Although a finding that a debtor's conduct is atypical is enough to deny a conversion motion, see Marrama, 549 U.S. at 374-75, the Court has reviewed the totality of the circumstances and has concluded that the Debtor has not filed the conversion motion in good faith and that the totality of the circumstances surrounding the Debtor's conversion supports the denial of the motion. An analysis of the totality of the circumstances factors follows below.

### A. Good Faith

As to the good faith factors, specifically, the Debtor's motive for filing and the timing of the request to convert, the Court concludes that the Debtor's motive and actions cannot support a finding of good faith. The Debtor asserts that: (1) only approximately $10,000 of the $473,177.49 of unsecured claims remain to be paid in the case; (2) he is now in a position to pay this debt since his hourly rate of pay has increased by $2.70 per hour; and (3) his motive for

14

requesting to convert at this time is because he can now afford to pay his creditors. The Trustee argues that the Debtor's request to convert is not motivated by his desire to pay his creditors, but instead, the request has been filed for the Debtor to escape the control of the Trustee and to stop the Trustee from continuing with the adversary proceeding that has been filed against the Debtor and his family. Portfolio Recovery and the Rioses support the Trustee's position. The Debtor responds to the Trustee's position by arguing that the Trustee is pursuing the fraudulent transfer claims and objecting to the Debtor's conversion motion solely because he wants his commission. Since the Court continues to question the Debtor's candor and honesty with the Trustee and the Court, and the Debtor, who has been in bankruptcy for well over a year, coincidentally or not, filed his conversion motion within weeks of learning of the Trustee's intent to pursue the Debtor's undisclosed properties, the Court finds that the Debtor's motive for converting and the timing of the request do not weigh in favor of a finding of good faith.

      Regarding the good faith factor of whether the Debtor has been forthcoming with the Court and the creditors, the Court does not find that the Debtor has been forthcoming. The Trustee maintains that: (1) the Debtor has concealed assets and/or hindered, delayed or defrauded creditors through his fraudulent transfers of potentially six properties; (2) the Debtor has purposely frustrated the Trustee's investigation of the Debtor's finances, and the Trustee has been forced to file multiple motions to compel the Debtor to provide information regarding assets – for example, the tax returns for the years 2005, 2006, 2007; (3) the Debtor has not accurately informed the Trustee of his debts, expenses, and/or income; and (4) the Debtor has continuously testified that he does not currently have the capability of paying his debts but now

claims he can afford to convert to pay creditors, amending his schedules to support his claim accordingly.

      Here, the Trustee's arguments are valid and supported by the record before the Court. The Debtor has not properly disclosed property in his Schedules A and B and in his SOFA and is aware that he signed these documents under penalty of perjury. Additionally, the Debtor was represented by an attorney when he originally filed his verified schedules and should have been advised as to requirements regarding disclosure of property and assets. The Trustee has expended much time and has incurred incredible expense to determine what assets the Debtor had or has and where those assets are located. Further, the Debtor filed motions to quash subpoenas against creditors requesting information regarding the assets and against the Trustee when the Trustee sought to depose the Debtor and his ex-wife. Because the Debtor has not properly disclosed relevant and mandatory information on his schedules and SOFA, has not cooperated with the Trustee's investigation of the Debtor's and the bankruptcy estate's assets, and has purposely caused an adversarial air to hang over any request by creditors to obtain appropriate and permissible information regarding the Debtor, the Court finds that the factor regarding whether the Debtor has been forthcoming does not weigh in favor of a finding of good faith. After reviewing the <u>Lilley</u> good faith factors outlined above, specifically, the factors focused on in <u>Murray</u>, the Court concludes that the Debtor has not filed this conversion request in good faith; therefore, this totality of the circumstances factor weighs against the Debtor's conversion.

### B.      Whether the Debtor Can Propose a Confirmable Plan

As to the totality of the circumstances factor regarding whether the Debtor could propose confirmable Chapter 13 plan, the Court concludes that, even using the hypothetical numbers for claims owed to creditors asserted by the Debtor, more than likely the Debtor would be unable to propose a confirmable plan. "[C]onversion should not be permitted when it would serve no point, for example, in matters when the debtor is demonstrably incapable of proposing a feasible plan." Pakuris, 262 B.R. at 337. The Trustee asserts that: (1) the Debtor's Plan does not account for all of the unsecured claims that remain on the claims register; (2) the Debtor does not include in his Plan payments for administrative expenses that have been incurred during his Chapter 7 case; and (3) the Debtor has not established that he has enough income to fund a Chapter 13 plan. In response to these arguments, the Debtor asserts that: (1) he has enough income to make Trustee payments of $50 a week for sixty months as evidenced by the Debtor's amended Schedules I and J, which is all that is needed to pay the creditors that have allowable claims; and (2) the administrative expenses incurred by the Trustee were not spent on administration of the estate but rather on litigation to prevent the Debtor's discharge and as such the expenses should not impinge upon the Debtor's ability to convert. Hypothetically, if the Rioses' claim of $250,000 did not exist, and the Debtor only had to pay $10,000 worth of claims to creditors and $100,000 of administrative expenses expended by the Trustee to uncover the Debtor's assets, the Debtor would have to pay over $1800 per month for sixty months to successfully complete a Chapter 13 plan. Even if the Debtor paid nothing to unsecured creditors, to pay the administrative claims, the Debtor would need to make trustee payments of over $1600 a month for sixty months. These hypotheticals do not even account for the Chapter 13 trustee's costs and

17

expenses. Because, according to the Debtor's amended Schedules I and J, the Debtor only has $447.51 of "Monthly Net Income," which is not enough to fund a feasible plan, and the Debtor could not file a plan in good faith as discussed above, the Court concludes that the Debtor cannot propose a confirmable Chapter 13 plan.

### C.  Prejudice to Creditors Caused by Allowing the Conversion

In reviewing the impact on the Debtor of denying conversion weighed against the prejudice to creditors caused by granting the conversion request, the Court concludes that the prejudice to creditors would outweigh the impact to the Debtor; therefore, this totality of the circumstances factor does not weigh in favor of conversion. Even if a debtor's conversion is granted, any proposed plan cannot "be confirmed under [11 U.S.C] § 1325(a)(4) unless it propose[s] to pay the creditors at least as much as they would receive in a chapter 7 liquidation;" but, "the creditors [] bear the risk of whether the debtor will be able to meet this requirement." Pakuris, 262 B.R. at 337.

Here, the Debtor argues that: (1) there is not a significant amount of debt to be paid; (2) creditors are not objecting to the conversion motion; and (3) creditors would benefit from this conversion to Chapter 13 because the Debtor is willing to pay off any creditors that remain after the disputed claims are expunged. The arguments made by the Debtor are not supported by the record. Creditors, Portfolio Recovery and the Rioses, have objected to the Debtor's request to convert. The Debtor refuses to accept that he may have to pay administrative claims from his Chapter 7 case beyond what he personally deems fair and reasonable, does not recognize the true amount of claims that are left to be paid, and does not understand the concept of the bankruptcy estate. The Debtor still has two adversary proceedings pending against him, and the Debtor has

not sufficiently established that he can maintain the bankruptcy estate and his Plan until the conclusion of those proceedings. The creditors should not have to take the risk that the Debtor cannot meet the requirements of Chapter 13, especially, given the Debtor's history of nondisclosure and concealment of assets. Now that the Trustee has withdrawn his adversary proceeding regarding the Debtor's discharge, the Debtor will receive a benefit from his Chapter 7 case. Because the Debtor will benefit from his Chapter 7 case, and the creditor's will receive little or no benefit from the Debtor's conversion to Chapter 13, the Court finds that the impact of the Debtor's denial of conversion is outweighed by the prejudice to creditors; therefore this totality of the circumstances factor does not weigh in favor of conversion.

### D. Efficient Administration of the Estate

Regarding the requested conversions' effect on the bankruptcy estate's efficient administration, the Court finds that the conversion to Chapter 13, and thus, the confirmation process required would not affect the administration of the bankruptcy estate; therefore, this factor does not weigh for or against the Debtor's conversion.

### E. Further an Abuse of the Bankruptcy Process

Because the Debtor has continuously failed to disclose assets, has not cooperated with the Trustee, has not established that he would be less evasive with creditors in Chapter 13, and is motivated to covert to Chapter 13 to escape the control of the Trustee, the Court concludes that the totality of the circumstances factor regarding whether conversion would further an abuse of the bankruptcy process weighs against the Debtor's conversion. "[A] motion to convert can be abusive when it is filed to frustrate the bankruptcy process, rather than to implement the Congressional policy of repayment of creditors." Pakuris, 262 B.R. at 338. As discussed above

in Section III. A, the Debtor's timing and motive for filing this motion to convert coincides with his awareness of the Trustee's intent to recover undisclosed assets from the Debtor and his family. Allowing the Debtor to evade the Trustee to the potential determent of creditors would further this Debtor's abuse of the bankruptcy process; therefore, this factor weighs against the conversion of the Debtor's case.

## IV.    CONCLUSION

After reviewing the statements and pleadings of the parties, the Court finds that the Debtor's conduct is atypical and that the Debtor has failed to file his motion to convert from Chapter 7 to Chapter 13 in good faith. As such, the Debtor's conversion motion is denied.

BY THE COURT:

_____
Gloria M. Burns
United States Bankruptcy Judge

Dated: June 10, 2009